## NORTON v. BRADHAM.

### *Ex Parte* STONE & CO.

1. Where the debt was contracted prior to the constitutional amendment of 1880, the question of homestead must be determined by the provisions of the constitution as originally adopted.

2. Section 20 of article I. of the constitution, directing a homestead exemption, is the mere general declaration of a right, which is subsequently defined and limited in section 32 of article II.

3. The legislature cannot change the character, amount, or beneficiaries of the exemptions provided for in section 32 of article II., the matter of exemptions having been fully occupied by that section.

4. A constitutional provision or statute exempting a homestead from levy and sale is not in derogation of common law, but is remedial in character, and should be so construed as to suppress the mischief and advance the remedy. A *dictum* in *Garaty* v. *Dubose*, 5 *S. C.*, 500, disputed.

5. The object of the constitution was to secure a homestead to the family ; the right of homestead was not limited to property owned by the head of the family, nor secured only against his debts.

6. Besides. in using the words "to secure the full enjoyment of said homestead to the person entitled thereto, or to the head of any family," the constitution shows that this exemption was for the benefit of some persons other than the heads of families. In a written constitution, force and effect must be given, if possible, to every clause.

7. Therefore, the legislature had full power to enact the act of 1874 (15 *Stat.*, 589), which extends to a wife, living with her husband who owns no property, the protection of a homestead exemption as against her own debts.

8. The terms of a constitutional amendment cannot control this court in giving construction to the provisions of the constitution as they originally stood.

9. Where land was sold under partition proceedings, and a judgment creditor of one of the parties sought to enforce his lien against his debtor's share of the proceeds, it was an application to secure payment of the debt by the use of final process, and as against such process a debtor, in proper cases, is entitled to a homestead exemption.

10. The proceeds of the sale for partition should be regarded as land, and as such the subject of a homestead exemption.

11. The debtor was not prevented from the assertion of her claim of homestead against the judgment by failing to claim it in the partition proceedings. *Ex parte Strobel*, 2 *S. C.*, 309, recognized and followed.

Before PRESSLEY, J., Orangeburg, October, 1882.

The opinion states the facts of the case. The Circuit decree was as follows:

Mary D. Norton had an interest in some land sold by proceedings in partition in this court, which ordered her share to be paid to her. O. M. Stone & Co. have a judgment against her on a debt older than the constitutional amendment of 1880, which allowed homestead to a married woman out of her separate estate. She is a married woman, but claims homestead on the ground that her husband has no land in which he can claim homestead. They resided on the land, the proceeds of which are now in court, until it was sold for partition.

She is entitled to homestead out of said proceeds, if the act of 1874 on that subject be constitutional. On that point I consider myself bound by the decision of the Appeal Court, which settles that the homestead exemption, before the late amendment of the constitution, could not be extended to *personal property*, other than was provided for in the constitution of 1868. It follows that it could not be extended to *persons*, not within the terms of said constitution, and a married woman, while her husband is living, is not the head of a family. She, therefore, cannot claim homestead against any debt contracted by her before the constitutional amendment of 1880.

It is ordered and adjudged, that the rule in this case be made absolute, and that the master of the court, out of the share of Mary D. Norton in said proceeds, do pay to 'O. M. Stone & Co., or their attorney, the amount of their judgment entered on November 11, 1882, with interest and costs, and the costs of the proceedings herein.

To this decree appellants excepted, and gave notice of appeal to the Supreme Court upon the following grounds:

1. Because the Circuit judge erred in holding that because the Supreme Court of this state has decided that the homestead exemption, before the late amendment to the constitution, could not be extended to other personal property than that named in article II., section 32, of the constitution of 1868, that, therefore,

such exemption could not be extended to a married woman whilst her husband is living, she having a separate real estate, and her husband having no real property in which the family homestead could be claimed.

2. Because the Circuit judge erred in holding that a married woman, who has a separate real estate, her husband having no real estate, cannot claim homestead against any debt contracted by her before the constitutional amendment of 1880.

3. Because the Circuit judge erred in not holding that appellant is entitled to her homestead exemption, under the act of 1874 on this subject, the debt of respondents being subsequent to said act, the same not being in violation of any of the provisions of the constitution of 1868.

4. Because the Circuit judge erred in not allowing the claim of homestead set up by appellant.

*Mr. James F. Izlar*, for appellant.

*Mr. Mortimer Glover*, contra.

July 22, 1884.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The appellant being entitled to an undivided moiety of a certain tract of land in Orangeburg county, instituted proceedings against A. H. Bradham and others for partition of the same.   It appearing from the return of the commissioners in partition, as well as from evidence taken by the master, that the land could not be divided without manifest injury to the rights of the parties, a sale was ordered, at which the sum of six hundred and thirty dollars was realized, and the object of this proceeding was to subject the portion of that sum to which Mrs. Norton is entitled to the payment of a certain judgment obtained against her by the respondents for the sum of $240.29, besides costs, on November 11, 1881, upon a debt contracted August 20, 1879.   The appellant resisted this application, upon the ground that her half of the proceeds of the sale of said land was exempt under the homestead laws.

It appeared in evidence that Mrs. Norton was a married woman, living with her husband on said tract of land up to the time

of the sale, and that he had no real estate in which a homestead exemption could be claimed. The Circuit judge held that she was not entitled to the exemption, inasmuch as she was not the head of a family, and the constitution secures the exemption only to the head of a family; that the act of 1874 (15 *Stat.*, 589) by which the legislature undertook to extend such exemption to a woman having a separate estate "married to the head of a family who has not of his own sufficient property to constitute a homestead," was without constitutional authority, and therefore null and void; and accordingly he ordered that the judgment of respondents be paid out of the proceeds of the sale to which Mrs. Norton was entitled. From this judgment Mrs. Norton appeals on the several grounds set out in the record, which need not be repeated here.

The debt upon which the judgment in favor of respondents was recovered, having been contracted prior to the constitutional amendment of 1880, it is quite clear that the question made by this appeal must be determined by the law as it stood previous to the adoption of that amendment. *Gunn* v. *Barry*, 15 *Wall*, 610; *Cochran* v. *Darcy*, 5 *S. C.*, 125. Indeed, this proposition does not seem to be contested by the counsel for appellant. The fundamental inquiry, therefore, in the case is, whether the act of 1874, cited above, is in violation of the provisions of the constitution as they stood prior to 1880.

There are two provisions in the constitution in reference to the homestead exemption, article I., § 20, which declares that "a reasonable amount of property, as a homestead, shall be exempted from seizure or sale for the payment of any debts or liabilities, except for the payment of such obligations as are provided for in this constitution;" and article II., § 32, which declares that, "the family homestead of the head of each family, residing in this state, such homestead consisting of dwelling house, out-buildings, and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy, or sale on any mesne or final process issued from any court. To secure the full enjoyment of said homestead exemption to the person entitled thereto, or to the head of any family, the personal property of such person, of the following character

\* \* \* not to exceed in value in the aggregate the sum of five hundred dollars, shall be subject to like exemption as said homestead, and there shall be exempt, in addition thereto, all necessary wearing apparel." Then follows the provision as to the character of debts, as to which such exemptions cannot be claimed, and the section concludes in these words: "It shall be the duty of the general assembly, at their first session, to enforce the provisions of this section by suitable legislation."

It will be observed that these two provisions are placed in different articles, one in the article designated "declaration of rights," while the other is in the article designated "legislative department." As might have been expected, therefore, the former is confined to a simple declaration of the general right of exemption, and its concluding words manifestly point to some other provision of the constitution where the general right thus declared is to be specifically defined and qualified. The latter, however, is specific in its terms, and declares to the law-making power what shall be the specific character and qualifications of the right which had been previously declared in general terms. We think, therefore, that in considering the question of the limits of legislative power upon this subject, it would be erroneous to confine our attention to the provisions of article I., § 20, but, on the contrary, that section should be regarded as a mere general declaration of a right which is subsequently defined and limited by the provisions of article II., § 32.

If the framers of the constitution had contented themselves simply with the insertion of section 20 of article I., then, clearly, the legislature would have had the power to enact any law upon the subject, not inconsistent with the general right thus guaranteed. They could have fixed the amount and character of property to be exempted and designated the persons entitled to claim such exemption, as well as the mode of proceeding by which such claim should be asserted. But when the people in their sovereign capacity, acting through a convention, went on and by section 32 of article II., prescribed what should be the nature and character of the homestead and personal property exempted, describing what it should be, the particular kind of property, its amount and value, and to whose benefit it should enure, all these matters were

placed beyond the domain of legislative power and nothing was left for the general assembly to do, except what was prescribed in the last clause of the section—pass the laws necessary and suitable "to enforce the provisions of this section." Hence, whenever the legislature undertakes to interpolate other provisions than those prescribed in that section, instead of simply confining themselves, as directed by the organic law, to the enactment of laws suitable for carrying into effect the provisions there prescribed, they are invading a province already fully occupied by the constitution, and transcending the limitation placed upon their powers by that instrument.

Accordingly, as was held in *Duncan* v. *Barnett*, 11 *S. C.*, 333, the legislature had no power to add to the list of articles mentioned in the constitution as exempt from levy and sale, because the supreme law of the land having already specifically designated the articles that should be so exempt, it was beyond the competency of the legislature to disturb or change the provisions which the people in their sovereign capacity had seen fit to make upon this subject. Hence, if a proper construction of the provisions of section 32 of article II., of the constitution, leads to the conclusion that the exemption thereby secured was intended only for the benefit of the head of the family, then the analogy, relied upon by the Circuit judge, between this case and *Duncan* v. *Barnett*, *supra*, would be complete. For if the constitution designates the person to whose benefit the exemption shall enure, then the legislature would have no more power to extend such exemption to a person other than the one so designated, than to extend the exemption so as to cover other property than that specifically designated in the constitution.

The inquiry then is, whether the constitutional provision confines the exemption provided for to the head of the family. Notwithstanding the remarks made by Moses, C. J., in *Garaty* v. *Dubose*, 5 *S. C.*, at page 500, that "statutes exempting property from liability to debts are in derogation of the common law, and not entitled to such a liberal construction as would extend them to those who are not in the spirit or letter of the policy of their enactment," we are not prepared to assent to the doctrine that a statute or constitutional provision exempting the homestead from levy and

sale under execution, is in derogation of the common law; for that remark was a mere *obiter dictum*, and not necessary to any point decided in the case. Lands were not liable at common law to levy and sale for debt, and have only been made so by statute. We are, therefore, rather inclined to regard such legislation as remedial in its character, and to be construed according to the rules applicable in the construction of that class of legislation. One of these rules is, that such legislation must be so construed as to suppress the mischief and advance the remedy.

Now the manifest object of the homestead law is to prevent the mischief which would ensue from having a family "sold out of house and home," and the remedy provided is to exempt the family homestead from liability to sale for debt. The object was to secure to the family, an institution which lies at the very foundation of a state, a shelter—a home. Accordingly, we find that it has been held in several cases in this state that the object of the protection afforded by the homestead clause of the constitution was the family, the head of the family standing as its representative. *In re Kennedy*, 2 *S. C.*, 227; *Bradley* v. *Rodelsperger*, 3 *S. C.*, 227; *Moore* v. *Parker*, 13 *S. C.*, 490. Looking at the constitutional provision now under consideration in this light, it would seem to be a matter of small importance whether the head of the family or any other member of the family was the legal owner of the family homestead. That is the thing exempted, and if the sale of it would deprive the family of its home, the mischief which it was designed to prevent would ensue, whether it was sold for the debt of the head of the family or for the debt of some other member of the family to whom such family homestead legally belonged.

Now let us examine the language of the section and see whether it is capable of the construction which we have indicated. The language is—not that the family homestead belonging to the head of each family shall be exempt—but the language is, "the family homestead of the head of each family." Does the word "of" necessarily imply ownership in the head of the family, or may not the language used in the constitution be properly employed to designate a homestead, which though actually owned by the wife, is yet "the family homestead of the head of the family," the hus-

band, in the sense that it is the place of his residence, of his home, and that of his family? We think it may, and that it should be so construed in order to carry into full effect the manifest object of the provision of the constitution. Again, it will be observed that the language is—not that the homestead shall be exempt from levy and sale for the debts of the head of the family—but it is, simply, that it "shall be exempt from attachment, levy, or sale on any mesne or final process issued from any court."

Still further, it will be noticed that the section proceeds in the following language: "To secure the full enjoyment of *said* homestead exemption *to the person entitled thereto, or* to the head of any family, the personal property of *such person*," of a specified character shall be likewise exempt. Now, the words italicized by us in the language of the section just quoted, seem to us, necessarily, to imply that the exemption provided for is not to the head of the family only, otherwise the words, "to the person entitled thereto or to the head of any family," would be rendered nugatory. This would be in violation of the rule laid down in *Cooley on Cons. Lim.*, at page 58, "that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory." In the next paragraph this eminent author proceeds to say: "This rule is especially applicable to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justifiable in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together."

Under this rule we are bound to give such a construction to this constitutional provision as will give some force and effect to

the words, "to secure the full enjoyment of *said* homestead ex-
emption *to the person entitled thereto, or to the head of any fam-
ily,"* which cannot be done by supposing that the object was to
confer this benefit upon the head of the family *only*, but which
may be done by supposing that the object was to confer this ben-
efit not only upon the head of the family, but also upon some
person other than the head of the family.    We think, therefore,
that the section of the constitution under consideration may well
be construed so as to extend the exemption therein provided to a
wife living with a husband who owns no property out of which a
homestead could be claimed, upon the family homestead owned by
her, which may well be designated as the family homestead of
the head of the family, the husband, in the sense that it is his
place of residence and that of the family of which he is the head—
that it is the home of himself and family.    We are of opinion,
therefore, that the legislature, so far from transcending its powers
in enacting the statute of 1874, above cited, was simply carrying
out the mandate of the constitution which required the enactment
of suitable legislation to enforce the provisions of section 32 of
article II., of the constitution.

   The argument that the subsequent adoption of the constitution-
al amendment of 1880, embodying similar provisions to those
contained in the act of 1874, is an indication that without such
amendment the act would be unauthorized, does not address it-
self to our minds with much force.    As a matter of fact, it is well
known to those acquainted with the history of that amendment,
that the prime object of it was to extend the articles of personal
property to be exempted, so as to embrace every species of that
class of property, instead of being confined to the articles speci-
fically designated in section 32 of article II., of the constitution,
as well as to remove any doubts that may have been entertained
as to whether a person who did not own any real estate—any
homestead proper—could claim an exemption of personal pro-
perty.    It is not difficult to conceive of reasons for incorporating
these provisions in the constitutional amendment, other than the
one suggested; but even if that reason be the true one, it would
not be controlling upon this court when called upon to construe
the provisions of the constitution as they originally stood.

Holding, as we do, that the act of 1874 was not in conflict with any constitutional provision, the question argued by appellant's counsel, as to whether a married woman living with her husband may not be considered as the head of the family, under the circumstances presented by this case, in the sense of these terms as used in the constitution, does not arise, and need not, therefore, be considered.

The other objections urged by respondents' counsel in his argument, to the allowance of the exemption claimed by the appellant, cannot be maintained. It is true that the land was sold, not under execution, but under proceedings for partition, but the judgment creditor is manifestly seeking to subject this property to the payment of his debt by the use of the final process of the court, and this is what the constitution designed to prohibit.

It is also true that the property which the appellant is claiming to have exempted is *now* in the form of money, and that personal property of that class was not exempt under the provisions of section 32 of article II., of the constitution, as was held in *Duncan* v. *Barnett, supra,* and *Union Bank* v. *Northrop,* 19 *S. C.,* 473; but it seems to us that it would be a perversion of the spirit and object of the homestead law to apply the doctrine of those decisions to this case. The property was land, and it was converted into money, not for the purpose of changing its character, but solely for the purpose of effecting a division, and the law will, in this case, as it does in many other cases, regard the property, when so converted, still as land.

The objection based upon the ground that appellant made no claim of homestead in the proceedings for partition, is disposed of by the case of *Ex parte Strobel,* 2 *S. C.,* 309.

The judgment of this court is that the judgment of the Circuit Court be reversed.